193 So.2d 779

Murphy LaCOSTE et al.

v.

J. RAY McDERMOTT & CO., Inc., et al.

No. 48239.

Jan. 16, 1967.

Aycock, Horne, Caldwell & Coleman, John E. Coleman, Jr., Franklin, for applicant.

Robert S. Cooper, Jr., Baton Rouge, for appellees.

McCALEB, Justice.

The question for decision in this matter is whether or not a workman is entitled to recover compensation benefits for total and permanent disability as a result of contraction of an occupational disease, to wit, silicosis, in spite of continued satisfactory performance of all duties of his job with the same employer.

Plaintiff, a sandblaster and painter, seeks recovery of compensation[1] on the theory that he has become totally and permanently disabled as the result of silicosis contracted during his employment. Defendant and its insurer deny plaintiff is suffering from silicosis and alternatively contend that, in any event, he is not disabled within the meaning of R.S. 23:1031.1 since he has steadfastly continued to perform all duties as a sandblaster and painter for his employer, J. Ray McDermott & Co. Inc., without complaint.

The district judge dismissed plaintiff's suit holding that it was immaterial whether he was suffering from silicosis and contracted the disease during his employment with McDermott for, assuming that such was the case, he has not become disabled as a result thereof. The judge said, in part: "An employee can no more recover compensation for an occupational disease that is not disabling than he can for an accident that is not disabling. The provisions of our Workmen's Compensation Law do not provide that an employee is entitled to recover compensation based upon his disability while continuing his usual employment at full pay."

On appeal the Court of Appeal, First Circuit, reversed and awarded compensation to plaintiff for total and permanent disability. The court was of the opinion that R.S. 23:1031.1, which provides for

---

1. Originally the suit was instituted by three brothers, Peter LaCoste, Barton LaCoste and Murphy LaCoste. The claim of Peter was dismissed upon its settlement by compromise agreement and Barton's demand was dismissed as of nonsuit by the Court of Appeal. Thus, the suit presently involves only the demand of Murphy LaCoste, the remaining claimant.

compensation to an employee "* * * who is disabled because of the contraction of an occupational disease as herein defined, * * *" broadly implies that the employee need not be disabled as a matter of fact at the time suit is brought and that it suffices for recovery, and he is to be considered legally disabled, when it is established, as here, that the occupational disease will ultimately disable and perhaps kill him if he continues to perform the duties of his employment. See LaCoste v. J. Ray McDermott & Company, La.App., 185 So.2d 553.

On application of defendants this court granted a writ of review, 249 La. 482, 187 So.2d 449.

Defendants contend the Court of Appeal erred in holding the employee "disabled" in view of the fact that he is presently performing all aspects of his occupation as fully as he did prior to the contraction of silicosis, thus erroneously equating contraction of silicosis with disability. Counsel assert that the basic prerequisite for recovery of workmen's compensation benefits (save in two specified cases, i.e., loss of a member and disfigurement) is proof of disability and loss of earning capacity and that the mere fact that a man has contracted one of the occupational diseases listed in the statute does not entitle him to benefits in the absence of a showing of factual disability under the clear wording of the statute itself.

Although the defendants denied below that plaintiff was suffering from silicosis, it has been conceded here that the medical opinion of Dr. Joseph E. Schenthal (which the Court of Appeal held should prevail) may be accepted. However, defendants point out that there is no evidence whatever that plaintiff has experienced undue pain or discomfort in the performance of his duties since it was diagnosed that he had contracted silicosis and he is not disabled within the meaning of the law.

The Court of Appeal expressed the view that the contraction of silicosis was, in itself, disabling within the meaning of the statute in this instance in view of the testimony of Dr. Schenthal, concluding that continuance by plaintiff of his present work will "* * * either materially impair his health, cause serious deterioration of his general physical condition, aggravate his disease, expose him to greater risk or danger than that attending an uninjured workman in the same field or accelerate his demise." In support of this holding the court cites McCain v. Fohs Oil Company (La.App.), 6 So.2d 197; Veillion v. Knapp & East (La.App.), 158 So.2d 336; Hibbard v. Blane (La.App.), 183 So. 39 and Johnson v. Travelers Insurance Co. (La.App.), 99 So.2d 372.

In our view the ruling of the Court of Appeal is clearly erroneous and an ex-

amination of the cases cited by the court reveals that none is applicable.[2]

■ It has been many times said that a workmen's compensation law is social legislation enacted for the joint benefit of labor and management in order to insure that employees who become disabled as the result of their labors in hazardous industries will be able to secure "* * * during the period of their disability, a weekly income for the upkeep of themselves and their families." Atchison v. May, 201 La. 1003, 10 So.2d 785. The fundamental principle for the grant of compensation benefits is disability, i.e., factual disability—for without disability, save in certain special cases, no benefits are due. By Act 532 of 1952, as amended by Act 39 of 1958, now R.S. 23:1031.1, certain occupational diseases are listed as compensable under the act. This section provides:

"A. Every employee who is *disabled* because of the contraction of an occupational disease as herein defined, * * * shall be entitled to the compensation provided in this Chapter *the same as if said employee received personal injury by accident* arising out of and in the course of his employment." (Italics ours).

Thus, according to the language of the statute, the benefits are payable to an employee who is "disabled"; not one who may at some future date become disabled as the Court of Appeal holds. Indeed, a reading of the act as a whole shows that benefits payable are conditioned upon an existing factual disability and it was neither intended nor authorized by the law that an employee would be entitled to recover these benefits for a supposed total permanent disability resulting from the contraction of an occupational disease while he is earning his full salary in the satisfactory performance of the very duties that he claims he is now disabled to perform. Throughout R.S. 23:1031.1 the words "disabled" and "disablement" are used. For example, in paragraph D of the section, which provides a period of peremption, it is stated: "All claims for *disablement*

2. In all of the cases cited by the court to buttress its holding, the employees had ceased their employment at the time suit was brought because of a claimed disability. In the Johnson case (lead poisoning) the matter was remanded for testimony on the question of whether an employee, who has recovered from lead poisoning, will endanger his life or health by returning to his former occupation of painting provided he uses the customary and standard precaution. The inference in this case was that a worker is not expected to endanger his health by a recurrence of the occupational disease after he has recovered therefrom.

However, the situation in that matter is vastly different from that in the case at bar where the employee continues in the employment and is not, in fact, disabled at the time he seeks compensation notwithstanding that there is medical testimony to the effect that he could become disabled in the future and it is predicted that, should he continue, the disease will cause his death.

arising from an occupational disease are forever barred unless * * *" the employee files his claim within a specified time. And in paragraph F, which excludes payment of compensation for occupational diseases under certain conditions, it is stated: "Compensation shall not be payable hereunder to an employee or his dependents on acount of *disability* or death arising from diseases * * *". (Italics ours).

■ In fine, in Louisiana "disability" has always been interpreted and understood to mean inability to perform the same or similar work the employee was doing when injured.[3]

■ The sole reason for the adoption of R.S. 23:1031.1 was to alleviate employees from the almost impossible task of proving "accident" in occupational diseases, the statute listing certain specific diseases which, upon proof of contraction thereof, will satisfy the requirement of proof of "accident" so as to be compensable in case of disability therefrom. But we reiterate that it was never envisioned that compensation would be due unless or until disability occurs. Albeit the medical testimony shows that, because of silicosis, plaintiff will impair his health to a greater degree by continuation of his occupation as a sandblaster, the fact remains that plaintiff has continued to work at the same

job for the same employer without undue pain or discomfort and, therefore, he cannot be regarded as disabled.

During oral argument of the case counsel for plaintiff raised the point (which had not been briefed) that, unless plaintiff is awarded compensation for permanent total disability at this time, he may lose his right to hereafter claim compensation if and when his working ability would become impaired as a result of the disease. In support of this position, counsel cited paragraph D of R.S. 23:1031.1, which provides:

"D. All claims for *disablement* arising from an occupational disease are forever barred unless the employee files a claim with his employer *within four months of the date of his contraction of the disease or within four months of the date that the disease first manifested itself.*" (Italics ours).

Counsel professes that, should compensation be denied plaintiff, he would be forever barred from claiming compensation for disability resulting from silicosis at any future time because he would have contracted the disease more than four months from the date such claim could be made.

■ We do not think that this result necessarily follows for, as long as the

3. See 2 Larson's Workmen's Compensation Law, Sec. 57.53, p. 29 and Sec. 57.22, p. 8 citing Washington v. Independent Ice & Cold Storage Co., 211 La. 690, 30 So. 2d 758 and Hughes v. Enloe, 214 La. 538, 38 So.2d 225 (1948).

suit is filed within four months of the date that the disease first manifests itself, it is not barred by peremption. It is important to note, in construing the statute, that the four month period of peremption operates as a bar only to claims for "disablement." An employee who is not disabled, although he knows he has contracted an occupational disease, is not required under a proper interpretation of the peremption provision to file his claim within four months of the date he was aware he contracted the disease. On the contrary, it is only when he becomes disabled that the disease manifests itself and the four month period runs from that time because, unless he is disabled, he has no cause of action for recovery of compensation. See Carlino v. United States Fidelity & Guaranty Company, 196 La. 400, 199 So.

4. Compare Frisby v. International Paper Co. (La.App.), 76 So.2d 621 and Ludlam v. International Paper Co. (La.App.), 139 So.2d 67, wherein pleas of peremption were overruled on a different interpretation of the statute. The better rule in other jurisdictions is that occurrence of disability marks the date on which the limitations begin to run in occupational disease cases. See 2 Larson, Workmen's Compensation Law, Section 95.22, p. 474 and annotation entitled "Limitations—Contracting Disease" 11 A.L.R.2d 277, et seq. See also in this connection comments contained in Malone, Louisiana Workmen's Compensation, Sec. 218, pages 81–85.

5. The judge, in a well considered opinion, was aware that, if plaintiff had contracted silicosis, the disease might disable plaintiff at some time in the future. Hence, he expressed his concern

228. If the peremptive provision is construed otherwise it leads to an absurdity as no claim for workmen's compensation is cognizable (save in the two cases to which we have hereinabove referred) unless and until the workman is disabled. Mottet v. Libby-Owens-Ford Glass Co., 220 La. 653, 57 So.2d 218; Wallace v. Remington Rand, Inc., 229 La. 651, 86 So.2d 522 and Bernard v. Louisiana Wild Life & Fisheries Commission (La.App.), 152 So.2d 114, (cert. denied).[4]

■ We therefore conclude that plaintiff's suit should not have been dismissed with prejudice, as the district court decreed,[5] but only as of nonsuit, reserving to plaintiff the right to file another compensation claim if and when he becomes disabled as a result of the occupational disease he has contracted.[6]

over the possibility that plaintiff's claim might hereafter be foreclosed by operation of the peremption provided for in paragraph D of R.S. 23:1031.1. He stated that, in view of this, he had searched for a way to determine the case in a manner that would not foreclose the plaintiff, but could find none " * * * except to refrain from adjudicating on the question of whether, or not, the plaintiffs actually have silicosis". It was for this reason that the judge concluded " * * * we are not holding that the plaintiffs have contracted the disease * * * or that this disease has manifested itself."

6. It is, of course, to be understood that our action in dismissing plaintiff's suit without prejudice does not in any manner preclude the defendants from asserting a plea or peremption as well as any other exceptions or pleas to any suit which may be hereafter brought by plaintiff.

For the reasons assigned, the judgment of the Court of Appeal is annulled and reversed and plaintiff's claim is dismissed as of nonsuit at his cost.

193 So.2d 783